UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Gigawatt Operations Inc. d/b/a Sol-Up, | Case No.: 2:23-cv-02036-JAD-NJK |
| Plaintiff | |
| v. | **Order Granting in Part Defendants' Special Motion to Dismiss** |
| Max Williams and Claire Williams, | [ECF No. 9] |
| Defendants | |

This case arises from a contract dispute between Gigawatt Operations Inc. d/b/a Sol-Up and Max and Claire Williams for a solar-system installation. The Williamses believe that they contracted for bird wiring to protect their solar equipment from wild animals, but when Sol-Up failed to install it, the Williamses refused to pay, wrote a negative Google review about their experience, and filed consumer complaints with the Nevada State Contractors Board and the Nevada Bureau of Consumer Protection. Sol-Up sues the Williamses for defaming it in the Google review, abusing the legal process by filing frivolous complaints, and other contract-related and tortious conduct.

The Williamses move to dismiss Sol-Up's defamation and abuse-of-process claims under Nevada's anti-SLAPP statutes, arguing that the Google review and consumer complaints were made in good faith and that Sol-Up cannot establish with prima facie evidence that it can prevail on either claim. Because the Williamses have demonstrated that their criticisms of Sol-Up are communications protected by the statutes, and Sol-Up has not shown a probability of succeeding on its defamation claim, I grant the Williamses' anti-SLAPP motion as to the defamation claim. But because Sol-Up has established the legal sufficiency of its abuse-of-process claim, I deny the motion as to that cause of action.

**Background**

In August 2022, Claire Williams and her son Max contracted with Sol-Up to install a solar-energy system at Claire's residence.[1] Sol-Up's initial bid included installation of bird wire to protect the equipment from wild animals.[2] But the language that appeared in the contract was much broader and instead provided for "bird protection" more generally.[3] Sol-Up installed a majority of the system and requested the full payment of roughly $18,000.[4] But Max told Sol-Up that the bird wire, along with several other services, had not yet been completed, and he would withhold payment until the job was finished.[5] Max and Sol-Up exchanged several emails about the bird wire and the Williamses' outstanding payment but were unable to reach an agreement.[6]

Sol-Up eventually came back to Claire's residence to install a different type of bird protection—a bird mesh—which, according to Sol-Up, was an upgrade from the bird wire.[7] But Max was not pleased. In another flurry of emails, Max told Sol-Up that he had contracted for bird wire and expected bird wire.[8] Sol-Up offered to install the bird wire but also made it clear that if Max didn't pay, it would "be required to file a lien" against Claire's home.[9] Max then refused to allow Sol-Up on the property without him present and left a scathing Google review

---

[1] ECF No. 1-1 at 16–20 (the agreement).
[2] ECF No. 9-2 at 3 (the proposal).
[3] ECF No. 1-1 at 17.
[4] ECF No. 9-3 at 2.
[5] *Id.* at 2–3.
[6] ECF No. 9-4.
[7] ECF No. 9-5 at 3–4.
[8] *Id.* at 4–5
[9] ECF No. 9-6 at 6.

recounting his experience with the company and the perceived breach of their agreement.[10] The Williamses filed two consumer complaints, one with the Nevada State Contractors Board and the other with the Bureau of Consumer Protection run through the Nevada Attorney General's Office.[11] Both agencies conducted investigations[12] but, in the end, the bird wire was never installed and the Williamses never paid.

      Sol-Up now sues the Williamses for breach of contract, intentional interference with contractual relations, breach of the implied covenant of good faith and fair dealing, conversion, unjust enrichment, defamation, and abuse of process.[13] Sol-Up alleges that the statements that Max made in his Google review were false and defamatory and that the two consumer complaints that the Williamses filed with the contractors board and the consumer-protection bureau were an abuse of those agencies' complaint-filing processes.[14]

      The Williamses seek to dismiss Sol-Up's defamation and abuse-of-process claims under Nevada's anti-SLAPP laws, arguing that the gist of the Google review is true, both the review and the consumer complaints were made in good faith and are considered protected communications under Nevada's anti-SLAPP laws, and Sol-Up cannot show a fair probability of success on either claim.[15] Sol-Up avers that the Google review contained false statements that prove that the review was made in bad faith.[16] It contends that it can establish with prima facie

---

[10] *Id.* at 7; ECF No. 1-1 at 22 (Google review).
[11] ECF Nos. 9-8, 9-9.
[12] ECF Nos. 9-10, 9-13.
[13] ECF No. 1-1 at 6–14.
[14] *Id.* at 12–13.
[15] ECF No. 9.
[16] ECF No. 15.

evidence that those statements are in fact false and that the Williamses acted with an ulterior motive when they filed their consumer complaints.[17]  Sol-Up also argues that the Williamses missed the statutory deadline to file their special motion to dismiss, so if nothing else, their motion should be denied as tardy.

**Discussion**

Strategic lawsuits against public participation—commonly known as "SLAPP suits"—"abuse the judicial process by chilling, intimidating, and punishing individuals for their involvement in public affairs."[18]  To curb these abusive lawsuits, the Nevada legislature adopted anti-SLAPP statutes, codified at NRS 41.635 et seq. that immunize protected speakers from suit by permitting a defendant to bring a special motion to dismiss an action "brought against a person based upon a good[-]faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern."[19]  This procedural mechanism "filters unmeritorious claims in an effort to protect citizens from costly retaliatory lawsuits arising from their right to free speech under both the Nevada and [f]ederal [c]onstitutions."[20]

---

[17] *Id.*

[18] *John v. Douglas Cnty. Sch. Dist.*, 219 P.3d 1276, 1281 (Nev. 2009), *superseded by statute on other grounds as stated in Shapiro v. Welt*, 389 P.3d 262, 266 (Nev. 2017).

[19] Nev. Rev. Stat. § 41.660(1).

[20] *John*, 219 P.3d at 1282.

**I.      The Williamses' delay in filing their anti-SLAPP special motion to dismiss is excused for good cause.**

To obtain the relief provided in Nevada's anti-SLAPP statutes, a special motion to dismiss "must be filed within 60 days after service of the complaint, which period may be extended by the court for good cause shown."[21] The Williamses filed their special motion to dismiss on day 61, so Sol-Up asks the court to disregard it as untimely.[22]

But the Williamses have shown good cause to extend that deadline by a single day. They attribute the delay to technical issues that they experienced while attaching the exhibits to their motion, causing the motion to hit the docket just a few minutes past the deadline.[23] This brief delay shows that they acted with reasonable diligence in their attempt to file it on time. And the delay had no practical effect on Sol-Up because Sol-Up received the motion on the morning of January 17th, the same time it would've received it had the Williamses timely filed right before midnight on January 16th. So because this delay was not dilatory or prejudicial, I do not find that it procedurally bars the Williamses' anti-SLAPP effort; I extend the deadline, making the motion timely; and I consider the motion on its merits.

**II.     Nevada's anti-SLAPP laws shield the Williamses from Sol-Up's defamation claim.**

Courts deciding motions under Nevada's anti-SLAPP statutes follow a two-step, burden-shifting framework. At the first step, the court must decide whether the defendant has shown that the subject communication is a good-faith one in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern and "which is truthful or

---

[21] Nev. Rev. Stat. § 41.660.
[22] ECF No. 15 at 9.
[23] ECF No. 18 at 3.

is made without knowledge of its falsehood."[24]  If the movant prevails at the first step, the burden then shifts to the plaintiff to "demonstrate[ ] with prima facie evidence a probability of prevailing on the claim."[25]

### A. The defendants have established that Max's Google review qualifies as a protected communication under NRS 41.637(4).

Nevada's anti-SLAPP law identifies four categories of protected communications, the fourth of which is found in NRS 41.637(4), which shields from retaliatory suit "[c]ommunications made in direct connection with an issue of public interest in a place open to the public or in a public forum [that are] truthful or [are] made without knowledge of [their] falsehood."[26]  The Williamses argue that Sol-Up's defamation claim, founded on Max's Google review, must be dismissed because the review is a matter of public interest, made in a public forum, that was truthful and made in good faith.[27]  While Sol-Up does not deny that the review is a public-interest communication made in a public forum, Sol-Up strongly disputes its truthfulness.[28]

In determining whether the first prong of the anti-SLAPP analysis is met, the court need not examine the truth of every word or sentence in a consumer review; the question the court must answer is whether the general "gist of the story" is true.[29]  The Supreme Court of Nevada's

---

[24] *Taylor v. Colon*, 482 P.3d 1212, 1215 (Nev. 2020); Nev. Rev. Stat. § 41.660(3)(a).

[25] *Rosen v. Tarkanian*, 453 P.3d 1220, 1223 (Nev. 2019) (quoting Nev. Rev. Stat. § 41.660(3)(b)).

[26] Nev. Rev. Stat. § 41.637(4).

[27] ECF No. 9 at 12–13.

[28] ECF No. 15 at 10–13.

[29] *Abrams*, 458 P.3d at 1068–69.

6

opinion in *Taylor v. Colon*[30] illustrates how this inquiry works. Taylor was a speaker at an international gaming conference. During his talk on the use of cheating devices, he played a video clip that depicted a blackjack player from the neck down, who was holding a "standard tally counter device under the table."[31] Colon saw Taylor's talk and claimed that "many attendees were able identify" the player as him. He alleged that Taylor said that the person in the clip had been "arrested for his behavior and was a cheater and criminal."[32]

Colon sued for defamation, and Taylor responded with an anti-SLAPP motion and a declaration that he believed his presentation materials to be based on true and accurate information. Though the district court denied the motion because it found that Taylor's presentation wasn't truthful or made without knowledge of falsity, the Supreme Court of Nevada reversed. It noted that a defendant's evidence, "especially a declaration regarding the defendant's state of mind, is . . . entitled to be believed . . . 'absent contradictory evidence in the record.'"[33] The High Court found that Taylor's declaration "demonstrated that [his] presentation was made in good faith" as it was based on information obtained from the Nevada Gaming Control Board and news that he believed to be correct.[34] While Taylor may have been wrong when he said that the person depicted in the video had been caught with a cheating device, as Colon claimed that the device at issue cannot be used to cheat at blackjack, Colon had been arrested for cheating that day. And because "the correct issue at prong one . . . is whether [the

---

[30] *Taylor v. Colon*, 482 P.3d 1212 (Nev. 2020).
[31] *Taylor*, 482 P.3d at 1214.
[32] *Id*.
[33] *Id*. at 1217 (quoting *Stark v. Lackey*, 458 P.3d 342, 347 (Nev. 2020)).
[34] *Id*. at 1218.

defendant] *believed*" the facts he was recounting were true "and not whether he was correct,"[35] the Court found that Taylor had shown that his "presentation was truthful or made without knowledge of its falsehood."[36]

Here, the defendants have similarly shown that Max's review was made without knowledge of its falsehood because he genuinely believed the facts as he recounted them. Max's review reads as follows (with emphasis added to highlight the statements that Sol-Up alleges are false):

> Physician here. I contracted with Sol-up to install a solar system on our house. Huge mistake. On the day of installation, despite not completing the job, Sol-up demanded full payment. I had already paid a $1,000 deposit and the balance was due upon completion of installation per the terms of our contract. After the first day of installation, they had yet to install the bird wire, hook the system up to WIFI, inspect it, paint the conduit, etc., but they were demanding full payment – first at the job site and then that evening by e-mail from the CFO no less. When I responded that they were in breach of our agreement and had yet to honor our contract, they were barely deterred. 2 months later, they were scheduled to complete installation by installing the bird wire. They didn't. Instead, and without my permission, **they installed an ugly black mesh that I had not contracted for** and had previously rejected. Then they demanded payment. After admitting in writing that the **contracted bird wire** had not been installed, they continued to demand payment. The simple solution here would be to remove the bird mesh and replace it with bird wire (which I requested), but apparently, that's not how Solup rolls. Just received an email giving me 2 days to pay or they'll lien my house. Do yourself a solid and choose a different solar provider. If I had to do it again, I would never contract with Sol-Up.[37]

The record demonstrates that Max honestly believed that he had contracted with Sol-Up to install bird wire and that Sol-Up's refusal to perform this service constituted a breach.[38] Max includes

---

[35] *Id.* (emphasis in original).
[36] *Id.*
[37] ECF No. 1-1; ECF No. 15 at 10.
[38] ECF No. 9-1.

8

a declaration with his motion attesting to his interpretation of the agreement,[39] and absent conflicting evidence, this declaration is sufficient to show that the review was truthful or made without knowledge of its falsehood.[40] Sol-Up in turn produces the actual contract that specifies "bird protection" to argue that Max must have known that the statements that he made in the review were false.[41] But the contract does not belie Max's interpretation of the agreement—that bird protection ostensibly means bird wire—which is the entire gist of his Google review.

But even if it did, the Williamses provide more evidence to show that Max truly believed that the contract included bird wire. The day after Sol-Up installed the solar equipment, Max responded to Sol-Up's email requesting payment, specifying that the installation was incomplete because Sol-Up had failed to install the bird wire.[42] In an exchange of emails sent in response, Max explained that he had contracted for bird wire, which was labeled in their agreement as a "system component," but had yet to receive it.[43] A month later, he sent another email relaying his concern that a wire mesh had been installed in place of the bird wire that he was expecting.[44] When the bird wire was never installed, Max concluded that Sol-Up had breached its agreement and filed complaints with the Nevada State Contractors Board and the Nevada Bureau of Consumer Protection.[45] So the record reflects that, from the very beginning after the initial equipment was installed, Max communicated his understanding that the deal included bird wire,

---

[39] *Id*. at ¶¶ 5, 7–8.

[40] *Stark v. Lackey*, 458 P.3d 342, 347 (Nev. 2020) ("[A] a sworn declaration . . . is sufficient evidence that the statements were truthful or made without knowledge of their falsehood.").

[41] ECF No. 15 at 12.

[42] ECF No. 9-3 at 2–3.

[43] ECF No. 9-4 at 5.

[44] ECF No. 9-5 at 2, 5.

[45] ECF No. 9-8.

and when that bird wire never came, his consumer complaints evince that he believed Sol-Up had breached their agreement.

Sol-Up perceives the gist of Max's review differently. It argues that, at its core, the review is a commentary on Sol-Up's untrustworthiness and unreasonable pursuit of its lien rights.[46] But nowhere in the review does Max describe Sol-Up as untrustworthy or any other equivalent modifier. Sol-Up did threaten to place a lien on Claire's home if the Williamses didn't pay, and Max does recount that event in his Google review.[47] But a single mention of Sol-Up's lien rights is not enough for that to become the essence of the review. The Supreme Court of Nevada has consistently held that, "in determining whether [] communications were made in good faith, the court must consider the 'gist or sting' of the communications as a whole, rather than parsing individual words in the communications" because "the relevant inquiry is 'whether a preponderance of the evidence demonstrates that the gist of the story, or the portion of the story that carries the sting of the statement, is true,' and not the 'literal truth of each word or detail used in a statement.'"[48] Because a preponderance of the evidence demonstrates that the gist of the Google review is truthful or was made without knowledge of its falsity, the Williamses have met their burden on the first prong for the defamation claim.

### B. Sol-Up has not shown a fair probability of prevailing on its defamation claim.

Under the second prong of the anti-SLAPP analysis, Sol-Up has the burden of showing that its defamation claim has "at least minimal merit in order to proceed with the litigation."[49]

---

[46] ECF No. 15 at 11 (cleaned up).
[47] ECF No. 1-1 at 22; ECF No. 9-6 at 6.
[48] *Taylor*, 482 P.3d at 1217 (quoting *Rosen v. Tarkanian*, 453 P.3d 1220, 1222 (Nev. 2019)).
[49] *Williams v. Lazer*, 495 P.3d 93, 98 (Nev. 2021) (citing *Abrams*, 458 P.3d at 1069).

10

To establish a prima facie case of defamation in Nevada, "a plaintiff must prove: (1) a false and defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages."[50] The words of a defamatory statement "must be reviewed in their entirety and in context to determine whether they are susceptible of defamatory meaning."[51] Generally, "only assertions of fact, not opinion, can be defamatory."[52] But "expressions of opinion [that] suggest that the speaker knows certain facts to be true or may imply that facts exist will be sufficient to render the message defamatory if false."[53] "[T]he court must ask whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact."[54]

    Sol-Up argues that Max's Google review defamed the company by falsely stating that they had contracted for bird wire when the agreement merely provided for "bird protection."[55] Sol-Up contends that it complied with the terms of the contract because the bird mesh that it eventually installed is a form of bird protection, and it suffered damages when the Google review stated otherwise.[56] The Williamses reassert that the gist of the Google review is true because the Williamses believed that they h ad contracted for bird wire.[57]

---

[50] *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993).

[51] *Id.* at 463.

[52] *Wynn v. Smith*, 16 P.3d 424, 431 (Nev. 2001).

[53] *Id*. (citation omitted).

[54] *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 88 (Nev. 2002) (quoting *Nevada Indep. Broad. Corp. v. Allen*, 664 P.2d 337, 342 (Nev. 1983)).

[55] ECF No. 15 at 10.

[56] *Id.* at 11–12.

[57] ECF No. 18 at 6.

"A review, by its very nature, constitutes the opinion of the reviewer," but there still may be actionable statements of fact contained within them.[58] In *Pegasus v. Reno Newspaper*, the Supreme Court of Nevada considered whether a negative restaurant review with allegedly false factual allegations was defamatory.[59] The review "criticized the freshness of [the restaurant's] food and indicated that [the customer] saw a can of processed pinto beans in the kitchen while paying for her meal."[60] While the court found that a reasonable person would likely construe the freshness comment as the customer's own opinion, it noted that the pinto-bean sighting was a closer call.[61] The court was cautious not to take the review out of context though.[62] The pinto-bean statement was nestled in a writing that was largely based on the reviewer's opinion.[63] The court found that, because the statement of fact about the pinto beans did not change the overall gist of the review as a general statement of opinion, it was not actionable defamation.[64]

Here the allegedly false statement in the Google review is also nested within personal opinions. The statement at issue—that the Williamses had contracted for bird wire, not bird mesh—is surrounded by Max's statements of opinion: it was a "huge mistake" to contract with Sol-Up; Sol-Up refused to replace the bird mesh with bird wire because "that's not how Sol-Up rolls"; if Max had to do it again, he "would never contract with Sol-Up"; and his recommendation for others to do themselves "a solid and choose a different solar provider."[65]

---

[58] *Pegasus*, 57 P.3d at 87–88.

[59] *Id.*

[60] *Id.* at 85.

[61] *Id.* at 89 (because it was in fact a true statement that the restaurant had canned pinto beans).

[62] *Id.* at 88.

[63] *Id.* at 90.

[64] *Id.*

[65] ECF No. 1-1 at 22.

The statement also directly precedes Max's opinionated description of the replacement product as "an ugly black mesh." A reasonable person reading these statements together would likely understand that the description of the mesh, the other emphatic opinion statements, and the statement at issue regarding the terms of the contract are Max's personal perception of Sol-Up's products and services and not meant as statements of fact.

Max does portend to know for a fact that he contracted for bird wire, and his certainty can make it possible for his statement to be defamatory if false. But his statement must also be read within the context of the entire review. And when read alongside Max's opinions about his experience with Sol-Up, and with the knowledge that the remark is part of a consumer review on a website where consumers submit ratings based on their perception of a personal experience, it becomes overshadowed by the nature of the review as a general statement of opinion. So although the statement that Max contracted for bird wire rather than bird mesh could be considered a statement of fact, it's nonetheless not actionable under *Pegasus* because it's subsumed by his opinions. Because "opinions cannot be defamatory,"[66] and Sol-Up thus cannot make out a prima facie case of defamation, its claim must be dismissed under NRS 41.660.

### III.  Sol-Up's abuse-of-process claim is not subject to dismissal under the statute.

Sol-Up's abuse-of-process claim is founded on the allegation that the Williamses' complaints to the contractors board and consumer-protection bureau were frivolous.[67] It claims that the Williamses had numerous opportunities to resolve this dispute but chose instead to file these complaints, abusing the government's "complaint[-]filing process"[68] The Williamses

---

[66] *Pegasus*, 57 P.3d at 87 (Nev. 2002) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974)).

[67] ECF No. 1-1 at ¶¶ 51–52.

[68] *Id.* at ¶ 53.

move to dismiss this claim under NRS 41.637(2), which shields from suit complaints "to a legislator, officer, or employee of the federal government, this state, or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity" and that are "truthful or . . . made without knowledge of [their] falsehood."[69]

In its opposition brief, Sol-Up jumps straight to the second prong of the anti-SLAPP analysis, arguing that "even if" the Williamses have shown that their complaints to these agencies qualify as protected communications under NRS 41.637(2), "the Court must not dismiss" its abuse-of-process claim "because [p]laintiff has demonstrated its elements," namely that the Williamses had an ulterior purpose other than resolving a legal dispute and they engaged in willful acts in the use of process that were not proper in the regular course of the proceedings.[70] To make that showing, Sol-Up offers its own recounting of the history of the bird-wire fight, highlighting that the Williamses refused to allow Sol-Up to correct the error and then "willfully chose not to attend" the contractors board hearing, "demonstrat[ing the Williamses'] ulterior motive to harm [Sol-Up] without having a willingness to actually remedy some legitimate concern . . . ."[71] It also points to Max's email (copied to the contractors board) in which he tells Sol-Up that "Sol-up does not have permission to be on our property at this time. If they are found to be on the property, without permission, the police will be called."[72]

What is clear here is that the facts underlying this abuse-of-process claim are materially and hotly disputed. But I find that Sol-Up has demonstrated (ever so slightly) on this record a

---

[69] Nev. Rev. Stat. § 41.637(2) (cleaned up).
[70] ECF No. 15 at 14.
[71] *Id.* at 15.
[72] ECF No. 9-11 at 3.

14

probability of prevailing on this claim. So I deny the motion to dismiss Sol-Up's abuse-of-process claim under Nevada's anti-SLAPP statute.

## Conclusion

IT IS THEREFORE ORDERED that defendants Max and Claire Williamses' special motion under NRS 41.660 to dismiss **[ECF No. 9] is GRANTED only as to Sol-Up's defamation claim; it is denied as to the abuse-of-process claim.**[73]

_____
U.S. District Judge Jennifer A. Dorsey
May 15, 2024

---

[73] The Williamses included in their motion a single-sentence request for attorneys' fees and costs. *See* ECF No. 9 at 16. Because that request does not comport with Local Rule 54-14, it is denied without prejudice to the ability to refile it at the appropriate time in accordance with the local rules.